United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VECTREN COMMUNICATIONS SERVICES, | No. C 08-3137 SI |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| v. | |
| CITY OF ALAMEDA, | |
| Defendant. | |

A trial was held from February 8, 2010 to March 8, 2010. The jury returned a special verdict, and made the following findings: (1) Vectren did not prove that Alameda breached the 2004 Installment Sale Agreement with respect to the rates it charged customers or the staffing of its operation of the Telecom System; (2) Vectren proved that Alameda breached the 2004 Installment Sale Agreement with respect to the addition of, or failure to add, voice or telephone service to the Telecom System, but Alameda proved that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim for breach; (3) Vectren proved that Alameda breached the 2004 Installment Sale Agreement by improperly accounting for the Net Series 2002A Revenues, and that Vectren suffered $1,948,129 in damages as a result of this breach; (4) Vectren proved that Alameda breached the 2004 Installment Sale Agreement by improperly selling the Telecom System, but Alameda proved that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim for breach; and (5) Alameda proved that Vectren gave up or waived its right to have Alameda perform obligations under the 2004 Installment Sale Agreement regarding the rate covenant, staffing provisions, and sale of the Telecom System, but that Alameda did not prove by clear and convincing evidence that Vectren gave up or

waived its right to have Alameda perform its obligations regarding voice/telephone.

The Court now makes findings of fact and conclusions of law on Vectren's equitable claims for declaratory relief and an accounting, and on the City of Alameda's affirmative equitable defenses of laches, unclean hands and estoppel.

## I.     Declaratory relief

Vectren's claim for declaratory relief seeks (1) a finding that Vectren did not repudiate the 2004 Installment Sale Agreement, and (2) a declaratory judgment "construing the disputed rights of VCS under the I[nstallment] S[ale] Agreement and related agreements." First Amended and Supplemental Compl. ¶ 67. As Vectren recognized in its trial brief, because Alameda did not assert the repudiation argument in its pretrial filings or at trial, "no declaration in this regard is needed." Docket No. 131 at 10:12-14.

In its trial brief, Vectren clarified the second prong of its claim for declaratory relief, stating that it sought an interpretation of the "disputed prohibition on sale" and that "if the extrinsic evidence regarding intent is materially disputed, then a special interrogatory on that issue may be appropriate for the jury." *Id*. at 10:15-16, 10:25-11:1. Vectren approved the verdict form (RT 2250:8), and Questions 3A-3D of the Special Verdict relate to Vectren's breach of contract claims regarding the allegedly improper sale of the Telecom System. The jury found that Alameda breached the 2004 Installment Sale Agreement by improperly selling the Telecom System, but that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim for breach. The Court finds the special verdict form sufficiently resolved any outstanding disputes regarding the parties' contractual rights, and that no declaration with respect to the prohibition on sale is needed.

Because there remains no actual controversy following the jury's verdict, the Court finds that Vectren's claim for declaratory relief is moot and accordingly it is DENIED. *See Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005) ("the appropriate standard for determining ripeness of private party contract disputes is the traditional ripeness standard, namely, whether there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to

2

warrant the issuance of a declaratory judgment.") (internal quotations omitted).

## II. Accounting

Vectren's third claim for relief seeks an accounting. "An accounting is a 'species of disclosure, predicated upon the plaintiff's legal inability to determine how much money, if any, is due.'" *Teselle v. McLoughlin*, 173 Cal. App. 4th 156, 180 (2009) (quoting 1A Corpus Juris Secundum, Accounting, § 6, ¶. 7-8 (2005)). At trial, Vectren's accounting expert calculated the exact amount Vectren claimed it was owed by Alameda. Ex. 179A-E. In closing argument, counsel for Vectren asked the jury to return a verdict on the breach of contract claims related to accounting in the amount of $1.9 million. RT 2650:19-22. The jury found in favor of Vectren on these claims, and awarded $1,948,129 in damages; according to Vectren's expert, $1,948,129 is the total net revenues after "accounting adjustments."

Based on this record, the Court finds that there is no need for an accounting, and accordingly this claim is DENIED. "An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation." *Teselle*, 173 Cal. App. 4th at 179. Moreover, in light of the jury's verdict, an accounting is unnecessary because there is an adequate remedy at law. *See St. James Church of Christ Holiness v. Superior Court*, 135 Cal. App. 2d 352, 359 (1955) ("A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law.").

## III. Laches

Alameda asserts that Vectren's claims regarding improper accounting are barred by laches. "The defense of laches requires unreasonable delay plus either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." *Johnson v. City of Loma Linda*, 24 Cal. 4th 61, 68 (2000).

Based upon the testimony of numerous witnesses at trial, the Court finds that the parties did not expect Vectren to begin receiving payments until 2007.

It was not until May 2009 that Alameda informed Vectren that Alameda had been "incorrectly"

3

excluding depreciation from the calculation of Net Revenues. Ex. 178.

Beginning in September 2004, Vectren received quarterly reports from Alameda that stated that Alameda was treating the costs of service drops and customer premises equipment as operating expenses. However, at trial several Vectren witnesses testified that the line item references in the quarterly statements did not indicate whether these were initial installations, and that from these statements Vectren could not determine what Alameda's capitalization policy was or how those line items were treated. Moreover, Alameda's Comprehensive Annual Financial Reports suggested that customer premises equipment installations and drops were being capitalized, and Mr. Balanchandran testified that statements in those reports may have led a reader to believe that installations were being capitalized.

Mr. Diliberto testified that Alameda's (1) failure to properly include miscellaneous credit to surplus in calculating Net Revenues, and (2) charging of legal and sales expenses to Net Revenues were not determined until during this litigation. Vectren's financial expert, Mr. Ainslie, testified that his firm reviewed over 100 boxes of complex accounting documents in connection with its investigation.

Based on the evidence at trial, the Court finds that Vectren was not tardy in pursuing its accounting or other claims, and that Alameda was not prejudiced. Accordingly, the Court concludes that the defense of laches is not applicable.

## IV. Unclean hands

Alameda asserts that Vectren's claims are barred by the doctrine of unclean hands. Alameda asserts that Vectren's August 2007 default notice and subsequent conduct constitute unclean hands because Vectren had no basis for declaring a default, and Vectren breached its non-disclosure agreement by disparaging the system to a potential purchaser, Halyard Capital.

To establish unclean hands, Alameda must establish that Vectren "behaved inequitably or in bad faith." *Hynix Semiconductor Inc. v. Rambus, Inc.*, 591 F. Supp. 2d 1038, 1060 (N.D. Cal. 2006) ("Under both federal and California law, one who has behaved inequitably or in bad faith is denied relief under the unclean hands doctrine."). "Bad intent is the essence of the defense of unclean hands" and "[a]ccidental, inadvertent or even grossly negligent behavior does not support the application of unclean

4

1  hands." *Id.* at 1065 (citing *Dollar Sys. v. Avcar Leasing Sys.*, 890 F.2d 165, 173 (9th Cir. 1989)). The
2  unclean hands defense requires a direct nexus between the alleged misconduct and the claim for which
3  it is being asserted as a defense, and that the conduct materially prejudiced the defendant's ability to
4  defend itself. *Id.* at 1066-67.

Based on the evidence at trial, the Court finds and concludes that Alameda did not prove the defense of unclean hands. With regard to Vectren's declaration of a default, Vectren's witnesses testified regarding the bases for declaring a default, which included the CCG report. The Court finds that the evidence at trial did not show that Vectren had no legitimate basis for declaring a default, or that Vectren acted with an improper purpose when it declared a default.

The Court also finds that Alameda did not prove that Vectren acted with unclean hands by breaching its non-disclosure agreement and interfering with a potential transaction with Halyard Capital. Ms. Witte testified that she did not provide the confidential Waller "book" to Vectren's expert, Bruce Jones, and she denied that she, Mr. Jones, or counsel violated any non-disclosure agreement. Mr. Jones testified that he never received a copy of the Waller "book," and he did not recall telling Halyard anything about the Telecom System other than that the situation in Alameda was difficult. Moreover, Alameda failed to establish that there was a potential agreement with Halyard. The evidence at trial showed only that Halyard "looked at the system to see that – if it was something they wanted to make a bid on," RT 746:4-7, and that Alameda received only two offers to buy the system, from Comcast and Wave.

Accordingly, the Court finds that Alameda did not prove the defense of unclean hands.

### V.  Estoppel

Alameda asserts that Vectren is estopped from (1) claiming that a sale of the Telecom System breached the 2004 Installment Sale Agreement, (2) asserting that Alameda improperly accounted for drops and converter boxes by expensing them, and (3) from asserting that Alameda's rates were too low.

The elements of estoppel are: (1) the party to be estopped must have been aware of the facts; (2) that party must either intend that its act or omission be acted upon, or must so act that the party asserting estoppel has a right to believe it was intended; (3) the party asserting estoppel must be unaware of the

facts; and (4) the party asserting estoppel must rely on the other party's conduct, to its detriment. *See Lusardi Construction v. Aubry*, 1 Cal. 4th 976, 994 (1992).

The evidence at trial did not establish that Vectren induced Alameda to change its position in reliance upon acts of Vectren, or that Alameda was injured by Vectren's conduct. While there was evidence that Vectren was aware since at least 2006 that Alameda was considering selling the Telecom System, there was also testimony that Alameda decided to sell the Telecom System for a variety of reasons, and not due to the conduct of Vectren. Similarly, Alameda's current and former employees testified that Alameda accounted for the Net Revenues based on its own understanding and intent. Finally, with regard to rates, Alameda did not prove that Vectren was aware of any facts of which Alameda was not aware, or that Alameda relied upon Vectren's conduct to Alameda's detriment.

Accordingly, the Court finds that Alameda did not prove the defense of equitable estoppel.

**IT IS SO ORDERED.**

Dated: April 20, 2010

SUSAN ILLSTON
United States District Judge