IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VECTREN COMMUNICATION SERVICES, INC., an Indiana corporation,<br><br>    Plaintiff,<br><br>    v.<br><br>CITY OF ALAMEDA, acting by and through Alameda Power & Telecom,<br><br>    Defendant. | No. C 08-3137 SI<br><br>**ORDER DENYING VECTREN'S POST-TRIAL MOTIONS, DENYING ALAMEDA'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW AND DENYING ALAMEDA'S MOTION FOR A NEW TRIAL** |

Now before the Court are the parties' post-trial motions. For the reasons set forth below, the Court DENIES Vectren's renewed motion for judgment as a matter of law and motion for a new trial, DENIES Alameda's renewed motion for judgment as a matter of law, and DENIES Alameda's motion for a new trial.

**BACKGROUND**

A trial was held from February 8, 2010 to March 8, 2010. The jury returned a special verdict, and made the following findings: (1) Vectren did not prove that Alameda breached the 2004 Installment Sale Agreement ("ISA") with respect to the rates it charged customers or the staffing of its operation of the Telecom System; (2) Vectren proved that Alameda breached the ISA with respect to the addition of, or failure to add, voice or telephone service to the Telecom System, but Alameda proved that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim for breach; (3) Vectren proved that Alameda breached the ISA by improperly accounting for the Net Series 2002A Revenues, and that Vectren suffered $1,948,129 in damages as a

result of this breach; (4) Vectren proved that Alameda breached the ISA by improperly selling the Telecom System, but Alameda proved that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim for breach; and (5) Alameda proved that Vectren gave up or waived its right to have Alameda perform obligations under the ISA regarding the rate covenant, staffing provisions, and sale of the Telecom System, but that Alameda did not prove by clear and convincing evidence that Vectren gave up or waived its right to have Alameda perform its obligations regarding voice/telephone.

By order filed April 20, 2010, the Court made findings of fact and conclusions of law regarding Vectren's equitable claims for declaratory relief and an accounting, and on the City of Alameda's affirmative equitable defenses of laches, unclean hands and estoppel. The Court held (1) because there was no actual controversy following the jury' verdict, Vectren's claim for declaratory relief was moot; (2) in light of the jury's finding in favor of Vectren on its breach of contract claims related to improper accounting, and the jury's award of $1,948,129 in damages, there was no need for an accounting; (3) based on the evidence at trial, Vectren was not tardy in pursuing its accounting or other claims, and that Alameda was not prejudiced, and thus the defense of laches was not available to Vectren's claims regarding improper accounting; (4) Alameda did not prove the defense of unclean hands with regard to Vectren's August 2007 default notice, and Alameda did not prove that Vectren acted with unclean hands by breaching its non-disclosure agreement and interfering with a potential transaction with Halyard Capital; and (5) Vectren was not estopped from (a) claiming that a sale of the Telecom System breached the ISA, (b) asserting that Alameda improperly accounted for drops and converter boxes by expensing them, and (c) from asserting that Alameda's rates were too low.

**LEGAL STANDARDS**

**I.  Motion for judgment as a matter of law**

In reviewing a renewed motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Josephs v. Pacific Bell*, 443 F.3d 1050, 1062 (9th Cir. 2006). "The test applied is whether the evidence permits only one reasonable conclusion, and that conclusion is contrary to the jury's

verdict." *Id.* The question is whether there is substantial evidence to support the jury finding for the non- moving party. *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F. 3d 1222, 1227 (9th Cir. 2001). In ruling on such a motion, the trial court may not weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists to support the verdict. *See Mosesian v. Peat, Marwick, Mitchell & Co.*, 727 F.2d 873, 877 (9th Cir. 1984). Substantial evidence is more than a scintilla of evidence. *See Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Chisholm Bris. Farm Equip. Co. v. Int'l Harvester Co.*, 498 F.2d 1137, 1140 (9th Cir. 1974). Rather, it is defined as such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence. *See Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

## II.     Motion for new trial

Rule 59 of the Federal Rules of Civil Procedure provides that "[a] new trial may be granted . . . for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Rule 59 gives the trial judge the power to prevent a miscarriage of justice. *Moist Cold Refrigerator Co. v. Lou Johnson Co.*, 249 F.2d 246 ( 9th Cir. 1957). A new trial may be ordered to correct manifest errors of law or fact, but "the burden of showing harmful error rests on the party seeking the new trial." *Malhiot v. Southern Cal. Retail Clerks Union*, 735 F.2d 1133 (9th Cir. 1984). A motion for new trial may invoke the court's discretion insofar as it is based on claims that "the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair . . . and may raise questions of law arising out of alleged substantial errors in admission or rejection of evidence or instructions to the jury." *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940). Where a movant claims that a verdict is against the clear weight of the evidence, a new trial should be granted where, after giving full respect to the jury's findings, the judge "is left with the definite and firm conviction that a mistake has been committed" by the jury. *Landes Const. Co.*, 833 F.2d at 1371-72.

The authority to grant a new trial under Rule 59 "is confided almost entirely to the exercise of discretion on the part of the trial court." *Allied Chem. Corp. v. Daiflon*, 449 U.S. 33, 36 (1980) (per

3

curiam); *see Vickery v. Fisher Governor Co.*, 417 F.2d 466, 470 (9th Cir. 1969) (trial court has "wide judicial discretion" in considering new trial motion). A trial court may grant a motion for a new trial if the verdict is "contrary to the clear weight of the evidence, or is based upon evidence which is false, or to prevent, in the sound discretion of the trial judge, a miscarriage of justice." *Roy v. Volkswagen of America, Inc.*, 896 F.2d 1174, 1176 (9th Cir. 1990) (quoting *Hanson v. Shell Oil Co.*, 541 F.2d 1352, 1359 (9th Cir. 1976)).

## DISCUSSION

### I. Vectren's renewed motion for judgment as a matter of law, and alternative motion for a new trial

The jury found that Alameda breached the ISA by selling the Telecom System, but also found that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of its claim based on the sale of the system, and that Vectren "waived" its rights with respect to breach due to sale. The jury also found that Alameda's failure to add a voice product was a breach of the ISA, but that Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of this claim.

Vectren renews its motion for judgment as a matter of law under Rule 50(b) and asks the Court to find that (1) Vectren's claim for "improperly selling" the Telecom System is neither time-barred nor waived, and (2) Vectren's claim for "[no] addition of or failure to add" voice is not time-barred. Vectren asserts that the grant of the Rule 50(b) motion would result in a 3 to 5 day partial trial on damages stemming from sale of the Telecom System and the failure to add voice. In the alternative, Vectren seeks a new trial as to the statute of limitations and waiver defenses limited to these breaches only, pursuant to Rule 59(a).

#### A. Sale

The jury found that although Alameda breached the ISA by selling the Telecom System, Vectren's claim regarding the sale was time-barred because Vectren knew or should have known all of the elements of its claim by August 29, 2006. In addition, the jury found that Vectren waived its claim

4

for breach arising from the sale of the Telecom System. Vectren challenges both of these findings. First, Vectren contends that its cause of action did not accrue, and the statute of limitations did not begin to run, until November 2008 when Alameda sold the Telecom System. Second, Vectren argues that there is no evidence that Vectren intentionally and expressly waived its contract rights with respect to the sale, nor is there substantial evidence to support a finding that Vectren implicitly waived its rights with respect to a sale.

Alameda responds that there is substantial evidence to support the jury's verdict on waiver, and that the Court need not reach the statute of limitations issue. Alameda argues that based on the evidence at trial, a reasonable juror could find that Vectren knowingly waived whatever right it may have had to prevent a sale. Alameda cites the following evidence: (1) the testimony of Vectren's president Liz Witte and CEO Carl Chapman that after reading Alameda's February 2006 business plan, they were aware that Alameda was considering a sale and neither said anything to Alameda about that possibility, nor did either officer tell Alameda that Vectren's consent would be required before there could be a sale; (2) the testimony of Ms. Witte that between June and September 2006 she encouraged the City to investigate a sale of the system, and the testimony of Mr. Chapman that, depending on the price, he was in favor of a sale; (3) testimony that Ms. Witte introduced Alameda to the broker who specialized in selling telecom systems and who ultimately put together the sale to Comcast; (4) in August 2007 Vectren notified Alameda in writing that Alameda was in default of its obligations under the ISA, and if Alameda did not cure its default, Vectren would pursue all available remedies, including requiring Alameda to sell the system; (5) pre-sale communications in 2008 between Vectren and Alameda in which Vectren informed Alameda that Alameda could not sell the system without Vectren's consent, and in which Vectren neither approved nor disapproved of a sale. *See* Ex. 169 (June 23, 2008 letter from Vectren to Alameda stating, *inter alia*, "Rather, a sale of the Telecom System by AP&T at this time . . . reasonably requires the consent of VCS. Nor is VCS refusing to consent. No transaction has been presented to VCS by AP&T.") Alameda characterizes the 2008 communications as Vectren "hedging its bets, refusing to tell Alameda either way whether it consented to the sale or did not." Opp'n at 9:2-3. On November 18, 2008, three days before the sale was consummated, Vectren informed Alameda in writing that it refused to consent to the sale.

5

Vectren disputes Alameda's characterization of the evidence, arguing that there was no "clear and convincing" evidence that Vectren waived its rights with respect to the sale. However, while Vectren's interpretation of the evidence is plausible, the jury's verdict must be upheld if there is evidence that is "adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion from the same evidence." *Johnson*, 251 F.3d at 1227. In reviewing Vectren's motion for judgment as a matter of law, the Court must view the evidence in the light most favorable to Alameda, the non-moving party, and all reasonable inferences must be drawn in favor of Alameda. *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). Similarly, in analyzing whether Vectren is entitled to a new trial on waiver, the Court must determine whether the jury's verdict is against the clear weight of the evidence. *See id*. at 630.

Applying these standards, the Court finds that there is substantial evidence to support the jury's verdict on waiver. The jury could reasonably have concluded that Vectren was fully aware that Alameda was actively exploring a sale of the system to Comcast, and that Vectren made the calculated decision not to formally object to the sale until right before the sale was to be consummated, at which point it was too late for Alameda to undo the transaction. The jury could have reasonably concluded that Vectren was, as Alameda contends, "hedging its bets" by allowing Alameda to believe that Vectren did not object to the sale until it was too late. Vectren argues now, as it did at trial, that it could not have objected to the sale any earlier than it did because "despite multiple written requests, Vectren was never presented with a sale transaction nor asked for consent, and therefore could not have refused anything." Reply at 8:8-10. However, the jury could reasonably have concluded that based upon the information Vectren knew about a potential sale generally and about the Comcast deal in particular, Vectren could have objected to the sale much earlier.

Because the Court concludes that there is substantial evidence to support the jury's verdict regarding waiver, it is unnecessary to reach the parties' arguments regarding the statute of limitations. *See City Solutions, Inc. v. Clear Channel Communications*, 365 F.3d 835, 842-43 (9th Cir. 2004); *Oahu Gas Serv., Inc. v. Pacific Resources, Inc.*, 838 F.2d 360, 367 n.1 (9th Cir. 1988). Similarly, the Court does not address Alameda's argument that Vectren failed to preserve its Rule 50(b) challenges to the jury's findings on the sale. Accordingly, the Court DENIES Vectren's motions for judgment as a matter

6

of law and for a new trial.

### B.     Voice

Vectren contends that the evidence at trial cannot reasonably support the jury's determination that Vectren knew or should have known of all of the elements of its claim for good faith breach due to the failure to add voice by August 29, 2006. Vectren argues that the breach that Vectren asserted at trial was Alameda's failure to implement a voice product beginning in January 2007, based upon the 2006 CCG report recommendations. Vectren argues that the evidence showed that Vectren did not learn about the CCG report and recommendation until April 2007, and thus that the statute of limitations could not begin running until April 2007 at the earliest. Vectren also argues that it could not have sustained actual and appreciable harm until January 2007 because the parties did not anticipate that net revenues would be payable to Vectren before that time.

In response, Alameda argues that the jury's verdict on the accrual of Vectren's voice claim is fully supported by the evidence, and that Vectren's Rule 50(b) motion ignores all of the evidence regarding knowledge of the voice claim prior to 2007.

Alameda argues that Vectren's Rule 50(b) motion is premised on the incorrect assumption that the jury must have found that Alameda breached the contract by failing to add voice services starting in January 2007, based upon the August 2006 CCG report. However, Alameda contends that the special verdict question regarding the voice claim is not limited to time, and that the jury was permitted to find a breach supporting Vectren's voice claim based on any act or omission by Alameda taking place at any time. Alameda argues that the jury could reasonably have concluded that, on at least five separate occasions before 2007, Vectren was fully aware that Alameda was not offering voice services at the time and had no plans to implement voice in the foreseeable future. As Vectren notes, some of the evidence cited by Alameda pre-dates the parties' execution of the ISA in April 2004, and thus in and of itself could not directly support a finding of a breach. However, the pre-2004 evidence showed that other telecom systems offered voice services, and that in 2002 when Alameda entered the original Installment Sale Agreement with Vectren, that Alameda was evaluating adding telephone service but that Alameda did not plan to add such service.

Moreover, much of the evidence regarding a voice option post-dates the execution of the ISA, and occurred prior to January 2007. For example, in 2005 Alameda provided a "comprehensive financial annual report" ("CAFR") to Vectren which stated, *inter alia*, that "Alameda P&T does not have plans to become a competitor in the wire line telephone business." Ex. 652 at ix. Vectren's CEO Carl Chapman testified that he read those statements. There was also testimony from Alameda's witnesses that in August 2004 and December 2004, Alameda had been studying the possibility of adding voice services, and at trial Vectren suggested that Alameda did not give the voice option proper consideration at that time. In addition, Vectren's president Liz Witte testified that in June 2006 she went to Alameda and met with AP&T employees and learned that Alameda was "studying" voice but had no actual plans at that time to implement voice services. The draft CCG report, upon which Vectren now relies as the earliest evidence of a breach, is dated August 15, 2006. That report states, *inter alia*, that "Voice is the product that completes the triple play – voice, video and data," that voice "is the highest margin product under the triple play," and that it was "mandatory" for Alameda to offer voice service. Ex. 96 at CCG260. Based upon this substantial evidence, the jury could have reasonably concluded that Alameda was in breach of the ISA by not adding voice service prior by August 29, 2006.

Alameda also argues that contrary to Vectren's argument, there is substantial evidence of harm prior to January 2007. Alameda notes that the ISA required Alameda to pay Vectren its net telecom revenues beginning on May 1, 2005, when the first installment was due, and thus starting on that date, Vectren would have had a cause of action for breach of contract against Alameda if Vectren believed that Alameda was not properly managing the system. Alameda also cites the testimony of Vectren's expert damages witness, Paul Ainslie, in which he stated that the Telecom System should have generated negative net revenues during the years ending in March 31, 2005 and March 31, 2006, without any telephone revenues, of approximately $725,000 and $3,000 respectively. Ex. 179G. In addition, Vectren's telecom expert, Bruce Jones, testified that the introduction of voice services would have generated additional net revenues immediately, and he projected over $1 million in net revenues from the addition of voice services during only the first three years after the system was launched. Ex. 179G. Based on this evidence, the jury could have reasonably concluded that Alameda should have added voice service as early as 2004, that substantial net revenues would have been generated before August

8

29, 2006, and thus that Vectren was harmed by that breach before August 29, 2006.

Vectren argues that the evidence at trial showed, and the Court found in its findings of fact and conclusions of law regarding Alameda's laches defense, that the parties did not expect Vectren to begin receiving payments until 2007. However, the fact that the parties did not believe Vectren would begin receiving payments until 2007 based upon the performance of the Telecom System is not inconsistent with, nor does it preclude, a concurrent finding that Vectren suffered harm prior to 2007 because it *would* have received revenue payments prior to 2007 if Alameda had implemented voice service.

The Court concludes that there is substantial evidence to support the jury's verdict that Vectren knew or should have known before August 29, 2006 all of the elements of its claim for good faith breach due to Alameda's failure to offer voice services, and DENIES Vectren's motion for judgment as a matter of law. In addition, the Court finds that the jury's verdict was not against the clear weight of the evidence, and thus DENIES Vectren's motion for new trial.

## II.     Alameda's renewed motion for judgment as a matter of law

### A.     Claims presentment

Alameda provides four independent grounds for judgment as a matter of law on Vectren's claim that Alameda breached the ISA by failing to properly account for Net Series 2002A Revenues. First, Alameda contends that Vectren did not present a claim for breach of contract based on the failure to properly account for revenues as required by the California Government Claims Act. Second, Alameda contends that Vectren was required to, and did not, establish that its accounting claims were the result of fraud or misconduct by Alameda. Third, Alameda contends that all of the evidence in the record shows that Vectren's accounting claims accrued before August 29, 2006, and therefore are time-barred. Finally, Alameda contends that Vectren never provided a notice of default, as it was contractually required to do under Section 9(b) of the ISA.

At trial, Vectren prevailed on its claim that Alameda breached the ISA by improperly treating depreciation as an operating expense, and by not capitalizing set top boxes and service drops, and the jury awarded over $1.9 million in damages for this breach. Alameda contends that Vectren did not present its claim for breach of contract based on improper accounting to Alameda as required by the

California Government Claims Act, Cal. Gov't Code § 915. California Government Code Section 945.4 provides that "no suit for money or damages may be brought against a public entity on a cause of action for which a claim is required to be presented in accordance with . . . Section 910 . . . until a written claim therefore has been presented to the public entity and has been acted upon by the board, or has been deemed to have been rejected by the board . . . ." Section 910, in turn, requires that the claim state the "date, place, and other circumstances of the occurrence or transaction which gave rise to the claim asserted" and provide "[a] general description of the . . . injury, damage or loss incurred so far as it may be known at the time of presentation of the claim." A claim for breach of contract is an action "for money or damages" under the Government Claims Act. *See Alliance Fin. v. City and County of San Francisco*, 64 Cal. App. 4th 635, 641 (1998).

Vectren argues that six different pre-litigation letters satisfied its obligation to present its accounting claims to Alameda before filing suit. It is undisputed that none of the letters comply with all of the requirements of Government Code Section 910 *et seq.* Instead, Vectren argues that one or more of the letters constituted "substantial compliance" or a claim "as presented," thus satisfying the claim presentment requirement. Under the "substantial compliance" test, the Court must determine if Vectren provided "sufficient information . . . on the face of the filed claim to reasonably enable the public entity to make an adequate investigation of the merits of the claim and to settle it without the expense of a lawsuit[.]" *City of San Jose v. Superior Court*, 12 Cal. 3d 447, 456 (1974). A "'claim as presented' is a claim that is defective in that it fails to comply substantially with Government Code sections 910 and 910.2, but nonetheless puts the public entity on notice that the claimant is attempting to file a valid claim and that litigation will result if it is not paid or otherwise resolved." *Alliance Fin.*, 64 Cal. App. 4th at 643.

Vectren relies on this Court's October 11, 2008 order, in which the Court held that Vectren's August 29, 2007 letter, discussed in greater detail *infra*, constituted substantial compliance and a claim "as presented," and denied Alameda's motion to dismiss Vectren's breach of contract claim. At the time of the October 11, 2008 order, Vectren's breach of contract claim was premised on Alameda's alleged breaches of the operations and rate covenants contained in the ISA. As Vectren acknowledges, Vectren was not aware of the precise accounting issues related to depreciation and capitalization of set top boxes

10

1 and service drops until after this lawsuit was filed when these matters came to light during discovery
2 and litigation. Nevertheless, Vectren argues that the August 29, 2007 letter and other pre-litigation
3 letters satisfied the claim presentment requirement with respect to the breach of contract accounting
4 claims because these letters put Alameda on notice that Vectren was contesting the Net Revenue
5 calculations.            Alameda contends that Vectren's pre-litigation letters dealt only with operational
6 and rate issues, and that the accounting claims are based on entirely different sets of facts. Alameda
7 argues that the basis of Vectren's pre-trial letters was that the Telecom System was not making money,
8 but that it would have been profitable if different operational and rate decisions had been made. In
9 contrast, Vectren's accounting claims are premised on the notion that the system was actually making
10 money as it was currently being operated, but that due to improper accounting the system appeared as
11 if it were losing money. Alameda argues that simply because Vectren raised "questions" in these letters
12 about how the Net Revenues were calculated does not satisfy Vectren's obligation under California law
13 to "put the public entity on notice of the assertion of a compensable claim and that the claimant intends
14 to pursue the matter by means of litigation if necessary." *Alliance Fin.*, 64 Cal. App. 4th at 650.

15 Under California law, "the factual circumstances set forth in the written claim must correspond
16 with the facts alleged in the complaint; even if the claim were timely, the complaint is vulnerable to a
17 demurrer if it alleges a factual basis for recovery which is not fairly reflected in the written claim."
18 *Nelson v. State of California*, 139 Cal. App. 3d 72, 79 (1982). The California Supreme Court has
19 explained that, "[a] complaint's fuller exposition of the factual basis beyond that given in the claim is
20 not fatal, so long as the complaint is not based on an 'entirely different set of facts.' Only where there
21 has been a 'complete shift of allegations, usually involving an effort to premise civil liability on acts or
22 omissions committed at different times or by different persons than those described in the claim,' have
23 courts generally found that complaint barred. Where the complaint merely elaborates or adds further
24 detail to a claim, but is predicated on the same fundamental actions or failures to act by the defendants,
25 courts have generally found the claim fairly reflects the facts pled in the complaint." *Stockett v.*
26 *Association of California Water Agencies*, 34 Cal. 4th 441, 447 (2004) (citations omitted).

27 The Court concludes that Vectren's pre-litigation letters satisfied its obligation to present its
28 claim for breach of contract based on a failure to properly account for Net Series 2002A Revenues,

11

under either the "substantial compliance" or claim "as presented" doctrines. The Court finds instructive *Stockett v. Association of California Water Agencies Joint Powers Ins. Authority*. In *Stockett*, the California Supreme Court examined the sufficiency of a tort claim filed by a plaintiff who alleged that he was wrongfully terminated in violation of public policy. The issue was whether the tort claim provided the public entity with sufficient notice of two wrongful termination theories presented at trial. The Supreme Court found that the claim complied with the Government Code:

> By notifying JPIA of its act (wrongful termination) that caused his injury (loss of earnings, mental and physical pain and suffering) and naming those JPIA agents he believed responsible, Stockett's claim provided sufficient information for JPIA to investigate and evaluate its merits. Contrary to JPIA's suggestion, a reasonable investigation of a wrongful termination claim would not be limited to the motives for termination hypothesized in the fired employee's claim form; certainly it would not be so limited where, as here, the employee at the time of termination asked for the reasons and was refused them. A reasonable investigation by JPIA would have included questioning members of the committee to discover their reasons for terminating Stockett and an evaluation of whether any of the reasons proffered by the committee, including but not limited to the theories in Stockett's claim, constituted wrongful termination.

*Stockett*, 34 Cal. 4th at 449. The court distinguished Stockett's case from *Fall River v. Superior Court*, 206 Cal. App. 3d 431 (1988):

> Unlike *Fall River v. Superior Court* (1988) 206 Cal.App.3d 431, 253 Cal.Rptr. 587, which JPIA cites as illustrating a fatal variance between a plaintiff's claim and complaint, the additional theories pled in Stockett's amended complaint did not shift liability to other parties or premise liability on acts committed at different times or places. In *Fall River*, the plaintiff was injured at school when a steel door struck his head. His notice of claim stated the injury was caused by the school's negligent maintenance of the door, but his complaint additionally alleged the school had negligently failed to supervise students engaged in horseplay. (*Id*. at 433-434, 253 Cal.Rptr. 587.) The court held the factual divergence between claim and complaint was too great; the complaint alleged liability "on an entirely different factual basis than what was set forth in the tort claim." (*Id*. at 435, 253 Cal.Rptr. 587.) Stockett's complaint, in contrast, alleged liability on the same wrongful act, his termination, as was stated in his notice of claim.

*Id*. at 448.

Here, like *Stockett*, there has not been a "complete shift in allegations." Vectren's August 29, 2007 letter states that Alameda agreed to "important covenants includ[ing] promises to operate the Telecom System in an efficient and economical manner, to operate and maintain the Telecom System in accordance with customary standards and practices of similar facilities, and to implement a program of rates and charges." Elder Decl. in Support of Alameda's Renewed Motion for Judgment as a Matter of Law, Ex. K. The letter also informed Alameda that Vectren would take whatever actions at "law or

equity that may appear necessary or desirable to collect the Installment Payments then due or to become due." *Id*. Vectren's August 29, 2007 letter put Alameda on notice that Alameda was obligated to pay all Net Revenues, and that it had not done so. Embraced within that dispute is Vectren's claim that Alameda did not pay all Net Revenues due to accounting errors. *See Connelly v. County of Fresno*, 146 Cal. App. 4th 29, 41-43 (2006). The parties' subsequent pre-litigation correspondence also shows that Vectren had significant concerns about Alameda's accounting, and that Vectren was seeking the necessary documentation to substantiate its concerns. *See* Elder Decl. Ex. L-P. Vectren repeatedly notified Alameda that it had specific questions regarding Alameda's accounting for certain income and expenses items, and that Vectren was asserting its right to an accounting by requesting inspection of the books and records.

Accordingly, the Court concludes that Vectren's pre-litigation letters substantially complied with the claims presentation requirement with regard to presenting Vectren's claim for breach of contract based on accounting issues.[1]

### B.     Fraud or willful misconduct

Alameda contends that Section 9.1(f) of the ISA establishes that alleged accounting irregularities only constitute a breach of contract if they are the result of fraud or willful misconduct by the City. This is the same argument that Alameda unsuccessfully advanced in its pretrial motion in limine No. 4.

Section 9.1 of the ISA sets forth eight types of default which are defined as "Events of Default." One event of default is if:

> (f) Alameda P&T shall intentionally or fraudulently divert Net Series 2002A Revenues or improperly account for or determine Net Series 2002A Revenues, if such improper accounting or determination is the result of willful misconduct or fraud.

Elder Decl. Ex. X. Section 9.2 of the ISA provides the remedies available for an event of default. Those remedies include declaring all of the unpaid "Installment Payments" and interest thereon at the appropriate rate immediately due and payable.

---

[1] In addition, Vectren's complaint alleged that Alameda was obligated to account for Net Revenues and that Alameda's financial statement "raise unresolved questions regarding the bases and accounting for Net Series 2002A Revenues . . . ." Compl. ¶¶ 63-64.

13

As the Court held in denying Alameda's motion in limine No. 4, the language of Section 9.1(f) provides for acceleration and other remedies in the event of a default due to fraudulent accounting, but nothing in the language of that section (or any other part of the ISA) states that the "willful misconduct or fraud" standard contained in Section 9.1(f) applies to all claims that the City improperly accounted for revenue. Simply because Section 9.1(f) provides that fraudulent accounting is an event of default triggering accelerated payments does not mean that non-fraudulent accounting claims are precluded. Under Alameda's interpretation of 9.1(f), Vectren would have no remedy under the ISA if Alameda failed to properly calculate Net Revenues, unless such failure was the result of fraud or willful misconduct. For these reasons, the Court DENIES Alameda's motion.

### C. Statute of limitations

The jury found that Alameda did not prove, by a preponderance of the evidence, that "Vectren knew, or by the exercise of reasonable care should have known, before August 29, 2006, of all of the elements of [the breach of contract claim related to allegedly improper accounting]." Alameda contends that the uncontroverted evidence in the record shows that Vectren's accounting claims accrued long before August 29, 2006, and are therefore barred by the Government Code's statute of limitations. Alameda asserts that Ms. Witte admitted that she could have determined from the annual certificate that Alameda had included depreciation as an operating expense in 2005. Alameda also cites the testimony of its own expert, Michael Diliberto, who stated that it would have been "obvious" to an accountant reviewing the 2005 certificate that depreciation was included in operating expenses; both Ms. Witte and Mr. Chapman have accounting backgrounds. However, both Ms. Witte and Mr. Diliberto testified that one could not determine, from the face of the 2005 certificate, whether depreciation was included or excluded in the calculations. Ms. Witte also testified that in her discussions with Alameda's personnel regarding the performance of the System, depreciation was always excluded from the calculations of Net Revenues, and the 2006 and 2007 certificates both explicitly excluded depreciation from the calculations. In addition, it was not until May 2009 that Alameda wrote and informed Vectren that it had been "incorrectly" excluding depreciation from the calculation of Net Revenues.

With regard to the capitalization of converter boxes and service drops, Alameda cites evidence

14

showing that the quarterly reports that Vectren received every three months since 2004 showed that drops and converter boxes were being treated as operating expenses. Alameda also cites evidence showing that drops and converter boxes were treated as expenses during the time that Vectren was managing the System. In response, Vectren notes that Ms. Witte also testified that Vectren could not determine how the capitalization policy was applied to these items based on a review of the quarterly reports. In addition, Vectren asserts that Alameda's CAFRs suggested that customer premises equipment installations and service drops were being capitalized. *See* Ex. 170, 183.

The Court finds that there is substantial evidence to support the jury's verdict that Vectren's accounting claims are not time-barred, and DENIES Alameda's motion.

### D. Default

Alameda contends that Vectren did not provide notice of default and a 30-day opportunity to cure with respect to its accounting claims as it was required under Section 9.1(b) of the ISA. Vectren's August 29, 2007 letter provided "Notice of Events of Default" and 30 days to cure, and outlined Vectren's cause of action for breach of contract for failure to earn Net Revenues. For the reasons set forth *supra*, the Court finds that this is sufficient to provide notice to Alameda of Vectren's claims regarding accounting for Net Revenues, and thus that Vectren complied with the ISA's notice requirements.

### III. Alameda's motion for a new trial

To a large degree, Alameda's motion for a new trial asserts arguments related to those rejected *supra*. For example, Alameda argues that the jury should have been, but was not, instructed that in order to establish breach of contract based on improper accounting, Vectren was required to prove fraud or willful misconduct. Similarly, Alameda argues that the jury should have been instructed that Vectren was required to prove that it provided a notice of default regarding the accounting claim. To the extent the Court has already rejected Alameda' contentions, the Court does not address them again here.

Alameda also contends that a new trial is warranted because the jury, not the Court, should have decided the question of Vectren's Government Claims Act compliance. Citing *State v. Superior Court*

15

*(Bodde)*, 32 Cal. 4th 1234 (2004), Alameda argues that claims presentation is an element of a cause of action against a public entity. In *Bodde*, the question was whether compliance with the claim presentation requirement contained in California Government Code § 900 *et seq.* was an element of a cause of action against a public entity such that facts demonstrating or excusing compliance must be alleged in the complaint. The lower courts had held that compliance with the Tort Claims Act was not an element of a claim against a public entity, and thus that noncompliance could not be raised on a demurrer, and instead that the State could raise noncompliance only as a defense in a motion for summary judgment or at trial. *Id*. at 1238. The Supreme Court reversed, holding that because compliance with the Tort Claims Act is a "condition precedent" to maintaining a suit against a public entity, such compliance was an element of a cause of action against a public entity, and therefore that the failure to plead facts demonstrating or excusing compliance with the claim presentation requirement of section 900 *et seq.* may be raised on a general demurrer to the complaint. *Id*. at 1239. Alameda argues that because *Bodde* held that claims presentation is an element of a cause of action against a public entity, the claims presentation question should have been tried to the jury.

The Court disagrees. *Bodde* does not hold that Government Claims Act compliance must be determined by the trier of fact on liability and damages. Instead, *Bodde* simply holds that claims presentation is a condition precedent to bringing suit against a public entity. Alameda's reliance on *Jefferson v. County of Kern*, 98 Cal. App. 4th 606 (2002), is also misplaced. *Jefferson* did not hold that a jury trial is required as to whether a plaintiff complied with the Government Code claims requirement. Instead, *Jefferson* held that a plaintiff "was entitled to a jury determination of the issue of the date of accrual of his cause of action." *Id*. at 620. Alameda does not cite any authority holding that claims presentation is an element of a claim against a public entity that must be decided by a jury, nor does Alameda cite any case in which a jury actually determined claims presentation.

To the contrary, claims presentation is generally decided by courts in pretrial motions, and the cases demonstrate that in deciding claim presentation questions, courts interpret statutory policy and purpose and analyze "substantial compliance" with claims presentation requirements – matters that are not within the province of the jury. *See, e.g.*, *Phillips v. Desert Hosp. Dist.*, 49 Cal. 3d 699, 709 (1989); *City of San Jose v. Superior Court*, 12 Cal.3d 447, 456-58 (1974); *Alliance Financial*, 64 Cal. App. 4th

16

at 650-65; *Life v. County of Los Angeles*, 227 Cal. App. 3d 894, 899-900 (1991); *Elias v. San Bernadino County Flood Control Dist.*, 68 Cal. App. 3d 70, 74-75 (1977); *see also County of Sacramento v. James*, 42 Cal. App. 3d 135, 139 (1974) (rejecting County's request for a jury trial of factual issues involved in a plaintiff's motion for relief from claim filing requirements because "[c]oncepts of fact-finding upon the basis of affidavits, the exercise of discretion in granting or denying relief, and the application of equitable powers are inapposite to trial by jury.").[2]

## CONCLUSION

For the foregoing reasons, the Court DENIES Vectren's motion for judgment as a matter of law and motion for a new trial, DENIES Alameda's renewed motion for judgment as a matter of law, and DENIES Alameda's motion for a new trial. (Docket Nos. 233, 235 & 236). The Court will issue a separate order on Alameda's motion to reduce the Clerk's taxation of costs.

**IT IS SO ORDERED.**

Dated: March 22, 2011

SUSAN ILLSTON
United States District Judge

---

[2] Because the Court rejects Alameda's contention that the jury should have decided the claims presentment issue, and because the Court has found both in pretrial orders and in this order that Vectren substantially complied with the claims presentment requirement, the Court does not further address Alameda's evidentiary arguments about claims presentment.