IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VECTREN COMMUNICATIONS SERVICES, | No. C 08-3137 SI |
| Plaintiff, | **ORDER RE: DEFENDANT'S MOTION FOR REVIEW OF CLERK OF COURT'S TAXATION OF COSTS** |
| v. | |
| CITY OF ALAMEDA, | |
| Defendant. | |

Defendant City of Alameda has filed a motion for review of the Clerk's taxation of costs. Pursuant to Civil Local Rule 7-1(b), the Court took the matter under submission without oral argument. The Court GRANTS Alameda's motion to file an enlarged reply brief, and AWARDS costs to Alameda as set forth in this order. This order resolves Docket Nos. 331 and 342.

**BACKGROUND**

Defendant City of Alameda seeks to recover costs in the amount of $316,063.84, consisting of (1) $1,087.43 in fees of the Clerk for filing the appeal and PACER charges; (2) $626.53 for service of subpoenas; (3) $19,047.81 for reporters' transcripts; (4) $56,451.94 for deposition costs; (5) $100,213.21 for document production costs; (4) $5,928.85 for trial exhibits; (5) $41,767.16 for charts and video; (6) $28,606.91 for witness expenses; and (7) $62,334.00 for bond premiums.

Vectren filed objections to the Bill of Costs, and on April 30, 2014, the Clerk issued its notice of Taxation of Costs. The Clerk taxed costs in the amount of $157,347.88. Alameda now seeks review of the Clerk's Taxation of Costs. The matter has been extensively briefed.

**LEGAL STANDARD**

28 U.S.C. § 1920 authorizes a judge or clerk of the district court to tax costs. Pursuant to Federal Rule of Civil Procedure 54(d), costs incurred by the prevailing party may be assessed against the losing party as of course and may be taxed by the clerk. "Unless a federal statute, these rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Taxable costs are listed in 28 U.S.C. § 1920 as follows:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Civil Local Rule 54-3 provides additional "standards for interpreting the costs allowed under section 1920." *Intermedics v. Ventritex, Co.*, No. C-90-20233, 1993 U.S. Dist. LEXIS 17803, at *2 (N.D. Cal. Dec. 2, 1993). The taxation of costs lies within the trial court's discretion. *In re Media Vision Tech. Secs. Litig.*, 913 F. Supp. 1362, 1366 (N.D. Cal. 1996).

According to Civil Local Rule 54-1(a), a bill of costs "must state separately and specifically each item of taxable costs claimed." Civ. L. R. 54-1(a). Further, a party seeking costs must provide an affidavit stating that the costs were "necessarily incurred, and are allowable by law" and "[a]ppropriate documentation to support each item claimed." *Id.* With regard to individual itemized costs, "the burden is on the party seeking costs . . . to establish the amount of compensable costs and expenses to which it is entitled." *Allison v. Bank One-Denver*, 289 F.3d 1223, 1248-49 (10th Cir. 2002).

**DISCUSSION**

**I.     Fees of the Clerk**

    **A.     Filing fee for appeal**

Alameda seeks to recover the $455 fee it paid to the Clerk of the district court in 2011 to file the

2

first appeal.[1] Vectren objects that this cost is not recoverable because the Ninth Circuit's August 2, 2013 Memorandum Opinion states that "[e]ach party shall bear its own costs on appeal." Alameda responds that the Ninth Circuit did not award costs on appeal because at the conclusion of the parties cross-appeals in 2013, neither party was the prevailing party. The Court agrees with Alameda that this filing fee is now recoverable because Alameda is the prevailing party.

### B.      PACER fees

Alameda seeks to recover $623.43 it paid to the court to access court records on PACER. Vectren objects that these costs are not recoverable under Civil Local Rule 54-3(d)(3), which states that "the cost of reproducing copies of motions, pleadings, notices, and other routine case papers is not allowable." Vectren also notes that this Court denied Alameda's requests for PACER costs in the related *Nuveen* and *Osher* cases.

Alameda responds that the PACER charges are not for reproducing copies of pleadings, but rather for viewing documents. Alameda asserts that these costs are recoverable pursuant to 28 U.S.C. § 1914, which allows "[t]he clerk to collect from the parties such additional fees only as are prescribed by the Judicial Conference." 28 U.S.C. § 1914(b). The Judicial Conference Schedule of Fees which immediately follows Section 1914 includes PACER fees. *See id.*

The Court has reviewed the authority cited by Alameda and concludes that PACER fees are recoverable as "fees of the clerk" under 28 U.S.C. § 1920. *See e.g.*, *Padula v. Morris*, No. 2:05-cv-00411-MCE-EFB, 2012 WL 525575, at *3 (E.D. Cal. Feb. 16, 2012). The Court also notes that Alameda did not cite Section 1914 as a basis for recovery of PACER fees in the *Nuveen* and *Osher* cases.

Accordingly, the Court awards $1,087.43 in fees of the Clerk for filing the appeal and PACER charges.

///

---

[1] Both parties have filed second cross-appeals from the Court's March 27, 2014 summary judgment order.

## II.  Subpoena fees

Alameda seeks $625.53 for fees for service of subpoenas. The Clerk disallowed $211.53 of these fees as "outside the ambit of Civil Local Rule 54-3(a)." Alameda's motion did not address this reduction, and Vectren's opposition states that "[t]herefore, Vectren understands that Alameda is not contesting the Clerk's decision regarding this item . . . ." Docket No. 339 at 3:10. Alameda's reply continues to seek all of the subpoena fees, but does not advance any argument about why the disallowed costs are recoverable. The Court finds that Alameda has not met its burden to demonstrate that the disallowed costs are recoverable, and further that it is improper for Alameda to seek these costs for the first time in its reply. Accordingly, the Court awards the amount taxed by the Clerk, $414.00.

## III.  Reporter's transcript costs

Alameda seeks costs incurred in obtaining transcripts of the trial and key hearings in this case, as well as a transcript of an Alameda City Council meeting (at the Court's request), for a total of $19,047.81. Alameda states that the transcripts were ordered in anticipation of the appeal as well as for use during trial court proceedings. Alameda seeks these costs pursuant to 28 U.S.C. § 1920(2), which allows for the recovery of costs incurred for "printed or electronically recorded transcripts necessarily obtained for use in the case," and pursuant to Civil Local Rule 54-3(b)(1), which states that "[t]he cost of transcripts necessarily obtained for an appeal is allowable." Alameda notes that Vectren sought, and was awarded, these same costs in 2010.[2]

Alameda argues that the transcripts were essential to the presentation of this case both at the district court level and on appeal. Alameda notes that both sides made extensive use of trial transcripts during closing arguments, post-trial motions, and on appeal, and that the need for trial transcripts was particularly important given the month-long length of trial, the number and complexity of the issues, and the more than 20 witnesses who testified. With regard to hearing transcripts, Alameda asserts that both sides used hearing transcripts in motion practice and on appeal.

---

[2] Vectren states that the Clerk disallowed the trial transcript costs when Vectren sought those costs in 2010. However, as Alameda notes, when the Clerk disallowed certain transcript costs claimed by Vectren, the Clerk cited Civil Local Rule 54-3(c) as the basis for doing so. That local rule relates to deposition costs. *See* Civil Local Rule 54-3(c).

4

Vectren argues that the reporters' transcript costs are not recoverable under the Local Rules because the transcripts were not "necessarily obtained for an appeal" as required by Civil Local Rule 54-3(b)(1). Vectren notes that the trial transcripts were ordered during trial and used during trial. However, Alameda seeks these costs pursuant both to the local rules and Section 1920, and Section 1920 allows for recovery of costs for transcripts obtained "for use in the case," and is not limited to appeal. The Court agrees with Alameda, and finds that the reporters' transcript costs are recoverable and awards $19,047.81.

**IV.     Costs associated with depositions**

Alameda seeks $56,451.94 in costs associated with depositions.[3] Alameda states that the parties took 26 depositions in this case, and that all but one were videotaped. The largest component of these costs, totaling $49,131.11, is for original deposition transcripts, transcript copies, videotape charges, copying of deposition exhibits, and normal delivery charges. The remaining costs are for (1) expedited transcripts, including express delivery, in the amount of $3,116.33; (2) rough disks or draft transcripts, totaling $3,600.40; and (3) condensed transcripts, final ASCII disks, e-transcripts, and scanned exhibits, totaling $605.00.

Alameda seeks these costs pursuant to Civil Local Rule 54-3(c), which provides that "[t]he cost of an original and one copy of any deposition (including videotaped depositions) taken for any purpose in connection with the case is allowable." Civil Local Rule 54-3(c)(1). That rule also provides that "[t]he cost of reproducing exhibits to depositions is allowable if the cost of the deposition is allowable." *Id*. at (2). Vectren does not object to the $49,131.11 requested for original deposition transcripts, transcript copies, videotape charges, copying of deposition exhibits, and normal delivery charges. Vectren does object to the remaining "extra" costs, such as for expedited transcripts, as not recoverable under Civil Local Rule 54-3(c)(1).

Alameda addresses Vectren's objections to the "extra" deposition costs as follows. With regard

---

[3] The Clerk reduced these costs by $15,000-$20,000, and it is unclear from the docket which costs were disallowed. Alameda states that Vectren sought the same disputed "extra" deposition costs in 2010, and that the Clerk reduced Vectren's deposition costs in 2010, but that it is also unclear which of Vectren's costs were disallowed.

5

to expedited and rough transcripts, Alameda acknowledges that while such costs are generally not recoverable, they may be allowable where circumstances warrant expedited transcription of testimony. Alameda cites *Meier v. United States*, No. C 05-4404 WHA, 2009 WL 982129, at *2 (N.D. Cal. Apr. 13, 2009), in which Judge Alsup awarded over $6,000 in expedited transcript costs to the defendant where "the depositions were expedited in order to accommodate the tight deposition schedule plaintiff himself requested. The costs to expedite the depositions therefore were not 'extra'; they were necessary under the circumstances of this case." Alameda asserts that the "rough" disks and expedited transcripts, totaling $6,716.73, were necessary to prepare for depositions, hearings, and other court deadlines.

The Court exercises its discretion and finds that the costs for these additional copies of deposition transcripts are not recoverable in this case. Unlike in *Meier*, where the expedited transcripts were necessitated by the deposition schedule that the plaintiff requested, Alameda has not shown that the deposition schedule or court deadlines were requested by Vectren, as opposed to jointly agreed upon or otherwise set by the Court. While the Court recognizes that the expedited and rough transcripts were useful to Alameda to prepare for depositions, hearings, and court filings, the Court does not find it appropriate to impose these costs on Vectren under the circumstances here.

The Court finds that the remaining "extra" costs, totaling $605.00, are recoverable. Alameda may recover costs for condensed transcripts because in those instances where Alameda received a condensed transcript, Alameda did not receive the original (the originals went to Vectren as part of a "Technology Package" ordered by Vectren). *See Ancora Tech., Inc. v. Apple, Inc.*, Case No. 11-CV-06357 YGR, 2013 WL 4532927, at *6 (N.D. Cal. Aug. 26, 2013). The costs for electronic transcripts and electronic scanning of exhibits are also recoverable. *See* 28 U.S.C. § 1920(2); Civil Local Rule 54-3(c)(3). Accordingly, the Court awards $49,736.11 in deposition costs.

### V.     Document production costs

Alameda seeks $100,213.21[4] in document production costs, as follows: (1) the cost of electronic production by DTI, a firm recommended by Vectren, in the amount of $26,417, and (2) the combined

---

[4] This amount reflects two deductions that Alameda made in response to Vectren's opposition.

6

cost of 83 separate hard copy document productions by several vendors, in the amount of $74,256. The parties produced 1,994,377 pages of documents, in both electronic and hard-copy form, with Alameda producing 1,935,405 pages and Vectren producing 58,972 pages. Aker Decl. ¶ 19. Alameda seeks these costs pursuant to 28 U.S.C. § 1920(4), which states that the Court may tax "fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," and Civil Local Rule 54-3(d)(2), which provides for "[t]he cost of reproducing disclosure or formal discovery documents when used for any purpose in the case." Civil L.R. 54-3(d)(2).

Vectren agrees that most of the electronic production costs are recoverable, with the exception of $2,430 for "EDD Tech Time (Search Term Filtering)" and a charge of $1,974 for converting 3.28 GB of data. Vectren asserts that the $2,430 charge is not recoverable because amounts paid for "intellectual effort" such as organizing, searching and analyzing are not recoverable as "fees for exemplification." *See Zuill v. Shanahan*, 80 F.3d 1366, 1371 (9th Cir. 1996) ("fees for exemplification and copying are permitted only for the physical preparation and duplication of documents, not the intellectual effort involved in their production."). Alameda has not cited any authority specifically holding that such costs are recoverable, and thus the Court disallows this expense. With respect to the $1,974 charge, Vectren states that it would be recoverable if that data was actually produced to Vectren, but that Vectren does not believe that it was. In response, Alameda has submitted a supplemental declaration from counsel stating that the data associated with the disputed charge was produced to Vectren. Supp. Aker Decl. ¶ 5. Accordingly, the Court finds that this cost is recoverable.

With regard to hard copy document production, Vectren agrees that $21,456.37 – the amount of 10 invoices that Vectren was able to match to specific productions – is recoverable by Alameda. Towle Decl. ¶ 10. As to the remaining hard copy costs sought by Alameda, Vectren raises a number of objections. As a general matter, Vectren states that if Alameda can demonstrate that other invoices correspond to document productions, Alameda is entitled to those costs. Vectren also disputes several invoices as being related to document production in *Nuveen*, other costs as nonrecoverable "routine monthly copy costs" charged by the Wulfsberg firm, and $486.46 in costs for providing courtesy copies to the Court. Vectren also asserts that Alameda should not recover costs for copying documents produced by Vectren or third parties, or for making copies of documents that were later withheld on

7

privilege grounds and thus not ultimately produced to Vectren.

In response, Alameda notes that Vectren sought and was awarded copying costs incurred not only in making its productions to Alameda, but also in copying pages it obtained from Alameda and third parties. Aker Decl. Ex. 13. Alameda also explains that it was necessary to make these copies because Vectren (and Alameda) produced documents in electronic form. *Id.* ¶¶ 17-18. Alameda also deducted two invoices that were related to *Nuveen*, and submitted a supplemental declaration of counsel explaining that the Wulfsberg firm charges were incurred to copy Vectren's documents, produced in electronic form, for depositions or trial exhibits. Supp. Aker Decl. ¶ 17. With regard to showing that the other disputed invoices correspond to document productions, Alameda has shown that the invoices submitted, totaling 340,988 pages, is close to (and less than) the estimated number of hard copy pages produced by the parties (357,377 pages). *See* Docket No. 343 at 10 (explaining calculations). *See also In re Ricoh Co., Ltd. Patent Litig.*, 661 F.3d 1361, 1369 (Fed. Cir. 2011) (applying Ninth Circuit law regarding recoverability of copying costs, and holding that "[t]he district court may choose to make a reasonable estimate of recoverable copying costs based on an estimate of the total number of pages of discovery [that were produced] multiplied by a reasonable price per page." ). Alameda has also shown that the per page charge is reasonable. Aker Decl. ¶ 20, Ex. 13. This case was complex and document production was significant, and the Court is satisfied that Alameda has sufficiently documented its copying costs, and that Alameda is entitled to recover for copying charges for Court-required courtesy copies, as well as copying documents obtained from Vectren and third parties.

Accordingly, the Court awards $97,783.21 in copying costs.

**VI.   Trial exhibits**

Alameda originally sought $10,661.42 for costs associated with preparation of trial exhibit binders. In its motion for review by this Court, Alameda removed three invoices totaling $3,582.25 from its request, and reduced all of the Blaisdell's invoices for office supplies by 50% to reflect the possibility that the supplies were used for preparing more binders than required by the Court. Aker Decl. ¶ 21. After making these deductions, Alameda states that it now seeks $5,928.85 for costs incurred preparing trial exhibits. Alameda states that with the four sets of binders that the Court

8

required, its trial exhibits numbered roughly 5,600 pages. In addition, by agreement of the parties, both sides exchanged their trial exhibits in scanned electronic form and delivered them on disks.

While the Court finds that Alameda is entitled to recover the cost of preparing trial exhibits, there are a number of problems with Alameda's documentation of these costs. The Blaisdell's invoices listed on Alameda's Schedule of Costs under "Reproducing Trial Exhibits" do not completely correlate with the invoices included within Exhibit E to the Bill of Costs. *See* Docket No. 324 at 10 (Schedule of Costs); Docket No. 325 at Ex. E. There are four copies of invoice #878643-0 for $933.20, and a different invoice for the same day with the same invoice number (#878643-0) in the amount of $785.34. The Schedule of Costs lists invoice "8786430" without specifying an amount. There are also two copies of an invoice (with no invoice number) dated January 4, 2010 in the amount of $909.60 and another invoice dated January 19, 2010 (with no invoice number) in the amount of $112.41; these invoices are not listed in the Schedule of Costs. Similarly, invoice #879555 in the amount of $775.80 was included in Exhibit E but is not listed on the Schedule of Costs; however, invoice #879555-0 in the amount of $374.36 is listed on the Schedule of Costs and included in Exhibit E. In addition, the Schedule of Costs lists a Ricoh invoice #OAK10020006 in the amount of $1,732.90, but the Court could not locate that invoice in Exhibit E. The Court disallows all of the invoices that are either not listed on the Schedule of Costs or for which there is no documentation, and because it is unclear which invoice #878643-0 is listed on the Schedule of Costs, the Court also disallows both of those invoices.[5]

Accordingly, the Court awards a total of $3,909.69, which consists of $3045.63 (OAK10010256, OAK10010282, WRC 9959 and WRC 10113) and $864.06 of Blaisdell's invoices (half of the total of $1,728.12 for Blaisdell invoices 877170-0, 877170-1, 877880-0, 878096-1, 878643-1, 878643-2, 878643-3, 879555-0).

---

[5] The Schedule of Costs lists a block of invoice numbers and a total for all of those invoices as $1,926.28. *See* Schedule of Costs at 10. However, in calculating all of the invoices listed except for #8786430, the amount is $1,353.76; neither of the #878643-0 invoices ($933.20 or $785.34) would bring the total to $1,926.28.

9

**VII.   Charts, diagrams and videos**

Alameda seeks $41,767.16 in costs incurred to prepare demonstrative aids for trial. Alameda states that these costs were incurred in "(a) preparing and electronically presenting its trial exhibits on the courtroom's video screen, (b) synchronizing, editing, and preparing excerpts of videotaped deposition testimony for presentation at trial, (c) preparation of trial boards displaying charts, graphs, a timeline, and highlighted document enlargements, (d) photographs of relevant Alameda geographical features or telecom equipment, and (e) standard blow-ups of various trial exhibits." Docket No. 331 at 20:14-19. Alameda seeks these costs pursuant to Civil Local Rule 54-3(d)(5), which states, "[t]he cost of preparing charts, diagrams, videotapes and other visual aids to be used as exhibits is allowable if such exhibits are reasonably necessary to assist the jury or the Court in understanding the issues at the trial." Civil Local Rule 54-3(d)(5).

Vectren objects to two invoices, the Advanced Courtroom Technologies ("ACT") invoice for $24,741.19 and the Berenson invoice for $13,969.78.[6] Alameda has submitted the declaration of Mitchell MacQueen, an ACT employee, to explain the various charges on the ACT invoice. MacQueen states that ACT provided the following services: (1) preparation of trial exhibits, charges listed under the headings "project management" and "trial consultant"; (2) synchronizing videotaped deposition testimony, under the heading "video services"; (3) assisting counsel in the courtroom during trial with the presentation of videotaped excerpts, under the headings "project management" and "trial consultant"; (4) setting up at the beginning of trial, and breaking down at the end, a screen and equipment (MacQueen does not state where those charges are found, but they appear to be under "logistic"); (5) preparing blow-up for trial, under the "graphic consulting" heading; and (6) delivery of DVDs, including parking and toll charges, under "other." MacQueen Decl. ¶ 2.

"Only the cost of physical preparation of demonstratives are recoverable under Civ. L.R. 54-3(d)(5); costs associated with the intellectual effort involved in creating the content of demonstratives are not recoverable." *Computer Cache Coherency Corp. v. Intel Corp.*, No. C-05-01766

---

[6] These amounts reflect voluntary deductions by Alameda of $920 from the ACT invoice for equipment rental charges, and $1,050 from the Berenson invoice for meetings and telephone conferences.

10

RMW, 2009 WL 5114002, at *2 (N.D. Cal. Dec. 18, 2009). Accordingly, the Court awards only those charges related to the physical preparation of the demonstratives. However, according to the MacQueen declaration, many of charges for physical preparation of demonstratives are listed under the same headings as charges for assisting counsel in the courtroom with presenting the exhibits. Alameda has not cited any authority holding that charges for assisting counsel in this way are recoverable. Alameda bears the burden of showing which charges are recoverable. Accordingly, the Court has reviewed the invoice and will only award those charges that are identifiable as being related to physical preparation of trial exhibits, which the Court determines is $6,975. The Court also finds that charges for synchronizing videotaped deposition testimony are not recoverable. S*ee Kalitta Air L.L.C. v. Central Texas Airborne Sys., Inc.*, 741 F.3d 955, 958-59 (9th Cir. 2013).[7] In addition, Alameda has not cited any authority holding that the other charges – such as for setting up and tearing down screens and equipment, and delivery and related charges – are recoverable.

With regard to the Berenson invoice, Vectren asserts that Alameda should only recover $6,192 spent physically preparing demonstratives. In response, Alameda has submitted the declaration of Lenny Berenson, who explains that other disputed charges were in fact for services preparing the trial boards. The Court has reviewed the invoice and the Berenson declaration, and concludes that Alameda should recover, in addition to the $6,192 in charges that Vectren concedes, $4,702 spent on "Computer Graphics: Exhibit Development," as Berenson states that those charges were incurred during the first step of producing the trial boards. Berenson Decl. ¶ 3. The remaining charges – for development of PowerPoint presentation that Alameda did not use (and thus were not "reasonably necessary to assist the jury or the Court in understanding the issues at trial"), packaging and courier delivery – are not recoverable. In addition, Alameda has not shown that a charge for "digital archival" is recoverable as the Berenson declaration does not address that charge.

Accordingly, the Court awards a total of $20,793.43 for charts, diagrams and visual aids.[8]

---

[7] Alameda's reliance on this Court's 2012 decision in *Nuveen* awarding such costs, as well as other district court cases issued prior to *Kalitta*, is unavailing.

[8] The Court also disallowed the $131.76 charge from One-Hour Delivery for delivery of DVDs.

11

## VIII. Witness fees

Alameda seeks $28,606.91 in expert witness costs, consisting of (1) $18,812.50 paid to three expert witnesses for their time traveling from Atlanta, Wisconsin and the Virgin Islands to San Francisco for deposition and for trial, at the experts' hourly rates of $250 per hour (Dawson and Stockton) and $200 per hour (Asp); (2) $9,668.41 in travel expenses such as hotel, airfare, and other charges; and (3) $126 paid in witness fees to two non-expert witnesses.

Civil Local Rule 54-3(e) states, "**Witness Expenses**. Per diem, subsistence and mileage payments for witnesses are allowable to the extent reasonably necessary and provided for by 28 U.S.C. § 1821. No other witness expenses, including fees for expert witnesses, are allowable." Civil Local Rule 54-3(e). Section 1821 does not list travel time as a recoverable cost. Alameda does not cite any authority within the Ninth Circuit holding that expert travel time is recoverable, and Ninth Circuit case law suggests that it is not:

> Federal law allows the defendant to recover forty dollars per day per witness. 28 U.S.C. § 1821(b). A federal court may not exceed this limit without explicit statutory or contractual authorization. *Crawford Fitting Co. v. J.T. Gibbons, Inc*., 482 U.S. 437, 445, 107 S.Ct. 2494, 2499, 96 L.Ed.2d 385 (1987). The court may not use other cost provisions like 28 U.S.C. § 1920 or Federal Rule of Civil Procedure 54(d) to circumvent section 1821(b). *Id*. at 442, 107 S.Ct. at 2497.

*Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995) (holding that district court erred by awarding expert costs in full because § 1821(b) only allows a witness fee of $40 per day). Alameda cites *United States v. 1.604 Acres of Land*, 275 F.R.D. 234, 235 (E.D. Va. 2011), for the proposition that courts have awarded travel time as a taxable cost. However, the court in that case did not analyze whether expert travel time is recoverable under § 1821(b), and instead examined whether expert travel time for depositions was recoverable pursuant to Federal Rule of Civil Procedure 26(b)(4)(E), which requires "the party seeking discovery" to "pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A)" unless manifest injustice would result. *See* Fed. R. Civ. P. 26(b)(4)(E). Moreover, the court in that case concluded that whether to award such costs was discretionary, and that the party seeking such costs must show, *inter alia*, that local experts were unavailable. *See United States v. 1.604 Acres of Land*, 275 F.R.D. at 235-36. Here, even if this Court agreed with the reasoning of *United States v. 1.604 Acres of Land*, Alameda has made no showing that

local experts were unavailable.

In support of the request for reimbursement of the experts' travel expenses, Alameda has submitted invoices from its experts. The invoices have varying levels of detail, with some simply listing amounts for "travel" on certain dates (invoice #1001 by Stockton, at p. 3), and others itemizing expenses separately for airfare, hotel, meals, mileage, etc. (invoice #11730 by Asp). With regard to airfare, 28 U.S.C. § 1821(c)(1) provides, "A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished." 28 U.S.C. § 1821(c)(1). The Court finds that for the airfare costs claimed for Dawson and Asp, the invoices combined with the Aker Declaration stating that the costs were actually incurred provides a sufficient basis for recovery. However, the airfare claimed for Stockton is not documented because the invoices do not specify which "travel" costs are attributable to airfare. Accordingly, the Court AWARDS $1,213.20 for Dawson's airfare and $913.79 for Asp's airfare, and DENIES the airfare reimbursement for Stockton without prejudice to Alameda submitting receipts or evidence of the actual cost of those airfare expenses.

With regard to meals and hotel costs, a number of courts within the Ninth Circuit have held that these costs are recoverable pursuant to 28 U.S.C. § 1821(d), which provides a subsistence allowance to a witness "when an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day" "in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services." *See, e.g.*, *Sunstone Behavioral Health, Inc. v. Alameda County Medical Center*, 646 F. Supp. 2d 1206, 1221 (E.D. Cal. 2009); *MEMC Electronic Materials v. Mitsubishi Materials*, No. C-01-4925 SBA(JCS), 2004 WL 5361246, at *9 (N.D. Cal. Oct. 22, 2004). Alameda has not submitted any evidence regarding the per diem allowance prescribed by the Administrator of General Services during the applicable time periods. In addition, the invoice for Dawson does not state how many nights of lodging were paid for, and the Stockton invoices do not separately itemize hotel and meal expenses. The hotel and meal costs

13

are DENIED without prejudice to submitting additional information regarding the applicable per diem allowance as well as additional documentation regarding the expenses claimed.

Finally, with regard to the balance of the expenses sought, the Court finds as follows. Alameda is entitled to witness fees of $40 each for the two non-expert witnesses rather than the full amount sought, and the Clerk properly awarded $80 total for those fees. Alameda is entitled to reimbursement of $46.02 for Asp's airport shuttle. *See* 28 U.S.C. § 821(c)(3) (providing for reimbursement of taxicab fares between places of lodging and carrier terminals). Alameda is also entitled to reimbursement for Asp's mileage pursuant to 28 U.S.C. § 821(c)(3). However, Alameda has not submitted evidence regarding the applicable mileage rates. Alameda may supplement the record on this issue. The remaining expenses sought are either not recoverable (e.g., internet access charges or supplies from Walgreens) or inadequately documented (unspecified taxicab rides).

Accordingly, the Court awards a total of $2,253.01 in witness expenses, and may award additional costs for Stockton's airfare, the meals and hotel, and Asp's mileage, if Alameda makes a further submission in accordance with this order.

## IX. Bond premiums

Alameda paid $62,334 in premiums for a supersedeas bond to secure the $1.9 million judgment entered by the Court on April 20, 2010. Aker Decl. ¶ 27. Alameda seeks to recover this amount pursuant to Local Rule 54-3(h), which allows the prevailing party to recover "[p]remiums on undertaking bonds and costs of providing security required by law, by order of a Judge, or otherwise."

Vectren concedes that Alameda is entitled to recover the bond premiums, but disputes the last of those annual premiums, paid in June 2013, as to which Vectren claims Alameda should seek a partial refund for the time period after the Ninth Circuit issued its opinion in August 2013. Vectren asserts that Alameda is not entitled to recover the entire $20,778 premium for the June 3, 2013 through June 2, 2014 period because the supersedeas bond filed by Alameda on June 3, 2011 states that "if for any reason the appeal is dismissed . . . [the bonding company's] obligation will be null and void." Docket No. 268. Vectren asserts that Alameda should be entitled to a refund for the portion of the premium covering the period after the Ninth Circuit's Order ending the appeal (from August 27, 2013 through June 2, 2014

14

or 280 of the 365 days covered by the premium, amounting to 71.7% of the period, or $14,897). Vectren states that it asked Alameda to investigate whether it was entitled to recover a refund, and that it should not have to pay the disputed amount if Alameda could obtain a refund.

In response, Alameda states that it "reviewed the terms of the bond in question, as well as applicable law, and found no support for Vectren's position." Docket No. 343 at 17. However, Alameda does not state whether any inquiry was made concerning its entitlement to a refund. The Court finds it is reasonable to require Alameda to investigate whether it may be entitled to a refund from the bonding agent and/or insurance company. Accordingly, the Court awards $47,437 for the bond premiums. The Court will award the remaining disputed portion of the bond premiums upon a showing by Alameda that it is not entitled to a refund of that amount from the bond agent and/or insurance company.

## CONCLUSION

For the foregoing reasons, Alameda's motion for review of the Clerk's taxation of costs is GRANTED IN PART and DENIED IN PART. The Court AWARDS a total of $242,461.69. If Alameda wishes to seek any of the costs that were denied without prejudice, Alameda shall file a supplemental submission regarding those costs by **August 1, 2014**. Vectren may respond by **August 8, 2014**. If the parties file supplemental briefs or declarations, the matter will be taken under submission without a hearing.

This order resolves Docket No. 331 and 342.

**IT IS SO ORDERED.**

Dated: July 22, 2014

SUSAN ILLSTON
United States District Judge